FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

CASE NO. 8:22cr69 VMC-JSS

18 U.S.C. § 371

v.

BRANDON GROSS

## INFORMATION

The United States Attorney charges:

### COUNT ONE
(Conspiracy to Defraud the United States and Pay and Receive Kickbacks)

A. Introduction

At all times material to this Information:

The Conspirators and Their Enterprises

1.  Brandon Gross was a resident of the Middle District of Florida, an owner and manager of A2B Insurance Solutions, LLC ("A2B Insurance"), and the owner and registered agent of Top Tier Marketing LLC ("Top Tier").

2.  Adam Kovacsik was a resident of the Middle District of Florida and an owner, a manager, the registered agent, and the founder of A2B Insurance.

3.  Christopher Ryan Helfrich was a resident of the Middle District of Florida, an owner of A2B Insurance, and the owner, registered agent, and founder of CRH Holdings, LLC ("CRH Holdings").

1

4. A2B Insurance was a limited liability company located in Seminole County in the Middle District of Florida.

5. Top Tier was a limited liability company located in Seminole County in the Middle District of Florida.

6. CRH Holdings was a limited liability company located in Hillsborough County in the Middle District of Florida.

7. Willie McNeal, IV was a resident of the Middle District of Florida and owner, president, founder, chief executive officer, and the registered agent of Integrated Support Plus, Inc. ("Integrated").

8. Integrated was a purported telemedicine company located in in Hernando County in the Middle District of Florida.

The Medicare Program

9. The Medicare Program ("Medicare") was a federal health insurance program that provided medical benefits, items, and services to beneficiaries:

    a. aged 65 and older,

    b. under 65 with certain disabilities, and

    c. of all ages with end-stage renal disease (permanent kidney failure requiring dialysis or a kidney transplant).

10. The Centers for Medicare and Medicaid Services ("CMS") was an agency of the U.S. Department of Health and Human Services ("HHS"), and was the federal government body responsible for the administration of Medicare.

11. Medicare programs covered different types of benefits that were separated into different program parts. Medicare Part B covered, among other things, doctors' services, outpatient care, and certain medical equipment that were medically necessary.

### DME Claims Submitted under Medicare Part B

12. Durable medical equipment ("DME") was reusable medical equipment such as orthotic devices, walkers, canes, or hospital beds. Orthotic devices were a type of DME that included knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

13. DME companies, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws, rules, and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for medically necessary items and services rendered to beneficiaries. Medicare providers were given access to Medicare manuals and service bulletins describing billing procedures, rules, and regulations.

14. Medicare reimbursed DME providers and other health care providers for medically necessary items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare,

either directly or through a billing company.

15. A Medicare claim for DME reimbursement was required to set forth, among other information, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

16. Medicare would pay a claim for the provision of DME only if the equipment was medically necessary, ordered by a licensed provider, and actually provided to the beneficiary. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

### B. The Conspiracy

17. From in or about August 2018, and continuing through in or about October 2019, in the Middle District of Florida, and elsewhere, the defendant,

BRANDON GROSS,

did knowingly and willfully combine, conspire, confederate, and agree with others, including Adam Kovacsik, Christopher Ryan Helfrich, Willie McNeal, IV, to:

   a. defraud the United States out of money and property and by impairing, impeding, obstructing and defeating the lawful functions of HHS, through its agency CMS, in the administration of Medicare, by deceit, craft, and trickery;; and

4

b. commit an offense against the United States, that is, soliciting and receiving remuneration (kickbacks and bribes), in violation of 42 U.S.C. § 1320a-7b(b)(1);; and

c. commit an offense against the United States, that is, offering and paying remuneration (kickbacks and bribes), in violation of 42 U.S.C. § 1320a-7b(b)(2).

### C. Purpose of the Conspiracy

18. It was a purpose of the conspiracy for Brandon Gross, Adam Kovacsik, Christopher Ryan Helfrich, Willie McNeal, IV, and others to unlawfully enrich themselves by, among other things: (a) soliciting, receiving, offering, and paying kickbacks and bribes in exchange for signed doctors' orders for braces; (b) submitting and causing the submission of false and fraudulent claims to Medicare for braces that were procured by the payment of kickbacks and bribes, medically unnecessary, and ineligible for reimbursement; (c) concealing and causing the concealment of false and fraudulent claims to Medicare, the receipt and transfer of the proceeds of the fraud, and the receipt and payment of kickbacks and bribes; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### D. Manner and Means

19. The manner and means by which the defendant and his conspirators sought to accomplish the purposes of the conspiracy included, among others, the following:

5

a. It was a part of the conspiracy that Brandon Gross, Adam Kovacsik, and Christopher Ryan Helfrich would and did own and control A2B Insurance.

b. It was further a part of the conspiracy that Brandon Gross, Adam Kovacsik, Christopher Ryan Helfrich, and others would and did obtain access to the personal identifiable information ("PII") and purported personal health information of thousands of Medicare beneficiaries.

c. It was further a part of the conspiracy that Brandon Gross, Adam Kovacsik, Christopher Ryan Helfrich, and others would and did purchase from CRH Holdings Medicare beneficiaries' PII and purported personal health information and recordings of the call center's calls to the Medicare beneficiaries.

d. It was further a part of the conspiracy that Brandon Gross, Adam Kovacsik, Christopher Ryan Helfrich, and others would and did send the Medicare beneficiaries' PII and purported personal health information to Integrated and others.

e. It was further a part of the conspiracy that Brandon Gross, Adam Kovacsik, and Christopher Ryan Helfrich would and did pay illegal kickbacks and bribes to Integrated and others in exchange for arranging for medical providers to sign orders for DME.

f. It was further a part of the conspiracy that Brandon Gross, Adam Kovacsik, Christopher Ryan Helfrich, Willie McNeal, IV, and others would and did conceal and disguise the nature and source of these kickbacks and bribes by entering

into sham contracts and by generating and causing the generation of fraudulent invoices that falsely identified the payments as for "BPO" (which is shorthand for "business process outsourcing").

   g. It was further a part of the conspiracy that Brandon Gross, Adam Kovacsik, Christopher Ryan Helfrich, and others would and did choose which braces medical providers would sign orders for DME based on which braces would be the most profitable and Medicare was least likely to question, regardless of the medical need of the patients.

   h. It was further a part of the conspiracy that in exchange for the referral of the brace orders, Brandon Gross, Adam Kovacsik, Christopher Ryan Helfrich, and others would and did receive illegal kickbacks and bribes from conspirators at DME providers and marketers acting as intermediaries on behalf of DME providers.

   i. It was further a part of the conspiracy that Brandon Gross, Adam Kovacsik, Christopher Ryan Helfrich, and others would and did disguise the nature and source of these kickbacks and bribes from DME providers, and their intermediaries, by entering into sham contracts that falsely identified the payments as for a flat or hourly rate, when in reality the conspirators paid a set amount per brace order.

   j. It was further a part of the conspiracy that the conspirators at DME providers would and did use these fraudulently obtained brace orders to support false

7

and fraudulent claims to Medicare.

k.  It was further a part of the conspiracy that, from in or around August 2018, through in or around October 2019, Brandon Gross, Adam Kovacsik, and Christopher Ryan Helfrich would and did pay, and cause to be paid, approximately $944,955 in illegal kickbacks and bribes in exchange for Medicare beneficiaries' PII and purported health information and in exchange for signed brace orders to their conspirators at Integrated and elsewhere.

l.  It was further a part of the conspiracy that, from in or around August 2018, through in or around October 2019, Brandon Gross, Adam Kovacsik, and Christopher Ryan Helfrich would and did receive approximately $1,470,247 in illegal kickbacks and bribes in exchange for signed brace orders from their conspirators at DME providers and conspirators acting as intermediaries for DME providers.

### E.  Overt Acts

20.  In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Tampa Division of the Middle District of Florida, and elsewhere, the following overt acts:

a.  On or about March 30, 2018, Top Tier paid A2B Insurance Solutions $5,000 via check.

b.  On or about June 7, 2018, Top Tier paid A2B Insurance Solutions $5,000 via check.

8

c. On or about August 30, 2018, Brandon Gross paid A2B Insurance Solutions $10,000 via Bank of America cashier's check.

d. On or about August 9, 2018, Christopher Ryan Helfrich sent an email to Brandon Gross and Adam Kovacsik with the subject "Brace combos and profits" setting forth, among other things, the costs of "teledoc," the cost of leads with specific brace combinations, and the expected cost and profit for doctors' orders prescribing certain brace combinations.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1. The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of a federal health care conspiracy, in violation of 18 U.S.C. § 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of at least $111,760, which is the amount the defendant obtained as a result of the commission of the offense.

4. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

ROGER B. HANDBERG
United States Attorney

Joseph S. Beemsterboer
Acting Chief, Fraud Section
U.S. Department of Justice

Catherine Wagner
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice